**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JOSHUA H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-CV-68-JSD |
| | ) | |
| FRANK BISIGNANO, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Joshua H. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Plaintiff's claim for DIB and SSI.

## I.    Background

Plaintiff protectively filed for DIB and SSI on June 4, 2021. (Plaintiff's Statement of Material Facts ("PSUMF"), ECF No. 20, ¶ 1) Plaintiff's request was denied upon reconsideration, on December 6, 2021. (PSUMF, ¶ 4) After a hearing before an administrative law judge ("ALJ"), 2024, the ALJ issued an unfavorable decision on February 9, 2023. (PSUMF, ¶ 6) On February 26, 2024, the Appeals Council denied review. (PSUMF, ¶ 8) On October 30, 2024, a United States District Court reversed and remanded Plaintiff's case to the Commissioner for further evaluation of his claim. (PSUMF, ¶ 10) On May 16, 2025, Plaintiff appeared via telephone and testified at a supplemental administrative hearing. (PSUMF, ¶ 11) The ALJ issued

an unfavorable decision, dated August 18, 2025. (PSUMF, ¶ 12) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 11, 2019, the alleged onset date. (PSUMF, ¶ 13) At Step 2, the ALJ found Plaintiff had the following severe medically determinable impairments: lumbar degenerative disk disease; osteoporosis; obesity; bipolar disorder; generalized anxiety disorder; attention deficit hyperactivity disorder (ADHD); and posttraumatic stress disorder (PTSD). (PSUMF, ¶ 14) The ALJ, however, found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (PSUMF, ¶ 15) The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR §404.1567(a) except:

> He can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, and crouch. He can never kneel or crawl. The claimant must avoid exposure to vibration and proximity to moving mechanical parts and working in high, exposed places. The claimant can understand, remember, and apply simple instructions, make simple work-related decisions, and sustain concentration, persistence and pace to perform simple tasks. The claimant can tolerate occasional interactions with supervisors and coworkers and no interaction with the public. The claimant can deal with occasional changes in a routine work setting with these limitations.

(PSUMF, ¶ 16). At Step 4, the ALJ determined that Plaintiff could not perform any of his past work. (PSUMF, ¶ 17) At Step 5, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (PSUMF, ¶ 18) Therefore, the ALJ determined that Plaintiff was not disabled. Plaintiff exhausted all of the administrative remedies and is entitled to judicial review by this Court. (PSUMF, ¶ 19) *See* 42 U.S.C. § 405(g). As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

2

## II.    Legal Standard

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the

3

analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.   Discussion

#### A.  Substantial Evidence

Plaintiff "disagrees that substantial evidence supports a sedentary RFC." (ECF No. 19 at 4) Plaintiff argues that the ALJ failed to develop the record fully and fairly because the ALJ did not obtain medical evidence that addresses Plaintiff's ability to function in the workplace and that supports the ALJ's RFC assessment during the entire period of disability. (ECF No. 19 at 3) Plaintiff complains that the ALJ determined his RFC without obtaining a medical opinion that supported this RFC. (ECF No. 19 at 4-5) Plaintiff admits that the ALJ need not base his RFC on a specific medical opinion but asserts that "when, as here, the ALJ acknowledges that the opinions from medical consultants are unpersuasive and stale, the ALJ must develop the record and obtain an updated medical opinion to support his decision that [Plaintiff] can sustain sedentary work." (ECF No. 19 at 5) Plaintiff asserts that the ALJ simply drew his own inferences about Plaintiff's functional ability from medical reports, which is improper. (ECF No. 19 at 5 (citing *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)) In sum, Plaintiff posits that "[s]ince the ALJ failed to fully and fairly develop the record, which led to an unsupportable RFC assessment, the administrative decision is not supported by substantial evidence and should be reversed and remanded for additional evaluation." (ECF No. 26 at 3)

Specifically, Plaintiff disagrees with the ALJ's characterization of Plaintiff's medical imaging as "fairly normal." (ECF No. 19 at 5 (citing Tr. 1012, ¶ 2) For instance, the ALJ described the April 4, 2024 CT of Plaintiff's lumbar spine as "benign" (Tr. 1011, ¶ 1), yet it showed:

> L5-S1 chronic postoperative changes of prior spinal fusion and chronic bilateral L5 spondylolysis with grade 1 spondylosis, interbody osseous fusion and bilateral facet hypertrophy with mild-to-moderate bilateral foraminal narrowing; and L4-5 with degenerative disk disease, right paracentral disk protrusion, bilateral facet hypertrophy and moderate right lateral recess narrowing with probable contact of descending right L5 nerve root.

(TR. 1822-23) Plaintiff also complains that the ALJ did not mention or evaluate a treatment note from Dennison Hamilton, M.D., dated September 1, 2023, identifying a recent lumbar MRI showing a new L4-5 disk protrusion. (ECF No. 19 at 6 (citing Tr. 1892)) Plaintiff also discusses his history of significant back pain that required a lumbar fusion in December 2020 (Tr. 627, 663, 1508) Recently, Plaintiff had an emergency encounter on January 8, 2025, for a flare of back pain after running out of medication and driving cross-state (Tr. 2588-89), and another on January 9, 2025, for pain related to shoveling snow days earlier. (Tr. 2539-43) Plaintiff complains that the ALJ improperly relied upon the x-ray of Plaintiff's lumbar spine from an ER visit on January 8, 2025, which "showed very little pathology," instead of the results of his 2022 CT, 2023 MRI, and 2024 CT. (ECF No. 19 at 7) Based upon these objective medical records, Plaintiff asserts that "the ALJ needed a medical opinion on which to base his decision that [Plaintiff] can maintain sedentary work, considering the: need for a permanent spinal cord stimulator implant; pain management; participation in physical therapy; findings of significant lumbar pain, positive SLRs and antalgic gait; moderate narrowing and abutment of the exiting L5 nerve roots; mild-to-moderate narrowing at L5-S1, after surgery at L5-S1; and a 'new disk protrusion.'" (ECF No. 19 at 8)

5

Plaintiff maintains that the ALJ "did not fulfil the duty to fully develop the record." (ECF No. 19 at 11) (citing *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020)). Plaintiff relies upon *Noerper*, where the Eighth Circuit found that the record was "fatally lacking" because there was "simply no reliable evidence providing a basis for the specific conclusion that [the claimant] can stand or walk for 6 hours in an 8-hour workday." *Noerper*, 964 F.3d at 746. The Eighth Circuit admitted that an ALJ is not required to "in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality" ... "[s]omething, however, is needed." *Noerper*, 964 F.3d at 746.

"A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004)); *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (same); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing *Harris v. Barnhart,* 356 F.3d 926, 931, n.2 (8th Cir. 2004); *see also Bowen v. Yuckert,* 482 U.S. 137, 146, n.5 (1987) (noting that the claimant is in a better position to provide information about his own medical condition)). The Court's role "on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir. 2000)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (cleaned up). Substantial evidence "is less than a preponderance, but enough that a reasonable mind might

6

accept as adequate to support a conclusion." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quotation omitted); *Bonham v. Bisignano*, 177 F.4th 934, 940 (8th Cir. 2026). The Court bears in mind that it is not its "role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in [the] determination of plaintiff's RFC." *Dotson v. Saul*, No. 4:20 CV 310 RWS, 2021 WL 2529786, at *5 (E.D. Mo. June 21, 2021) (citing *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016)). Rather, it is the ALJ's duty to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue,* 648 F.3d 605, 615 (8th Cir. 2011). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue,* 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)). "The ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala,* 52 F.3d 784, 787 (8th Cir. 1995). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quotation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (cleaned up); *Bonham*, 177 F.4th at 941. The RFC must only include those impairments that are substantially supported by the record as a whole. *Goose v. Apfel,* 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart,* 377 F.3d 892, 897 (8th Cir. 2004).

The Court finds that the ALJ fashioned the RFC to address Plaintiff's subjective complaints to the extent that they were supported in the record. Plaintiff, who bears the burden of proving his RFC, has not proven additional limitations. *See Eichelberger*, 390 F.3d at 591. The ALJ found Plaintiff was more limited than determined by the state agency medical consultants, who only had available to them records through 2022. (Tr. 241-42, 268-69, 1013) The ALJ evaluated Plaintiff's history of back pain, including his lumbar fusion in December 2020. (Tr. 627, 663, 1508) Thereafter, in August 2021, the ALJ noted that Plaintiff's pain level and discomfort had significantly decreased, even to the point where he could swim weekly. (Tr. 633, 1010) In 2022, Plaintiff participated in physical therapy and reported doing well with medication. (Tr. 893, 908, 917, 2123) In June 2023, Plaintiff underwent a spinal cord stimulator implantation, which controlled his pain for several months. (Tr. 1353, 1759) In August 2023, Plaintiff experienced an increase in pain, which resulted in a change in his medication. (Tr. 1892) In 2024 and 2025, Plaintiff received emergency room treatment, but the records are devoid of regularly scheduled pain management appointments. (Tr. 1820, 2539, 2546, 2559) Indeed, Plaintiff received emergency room treatment on January 8, 2025, for a back pain flare up after driving cross-state without medication (Tr. 2588-89) and on January 9, 2025, for pain after shoveling snow days earlier. (Tr. 2539-43) Imaging from his emergency treatment did not show any displaced fracture and the visualized hardware was intact, without any evidence of hardware complications. (Tr. 2590-92; 2596) Plaintiff was prescribed limited amounts of Oxycontin at both emergency room visits and was instructed to follow up with a primary care provider and pain management. (Tr. 2539-43, 2588-89) Plaintiff advised that he had an appointment scheduled with a primary care provider on January 29, 2025. (*Id.*) On May 9, 2025, Plaintiff was seen by a pain management specialist; Plaintiff reported medication and spinal cord stimulation

8

helped his pain. (Tr. 2559-63) Plaintiff had an antalgic gait, tenderness to palpitation, and straight-leg raises caused low back pain. (Tr. 2561)

The Court likens this case to the recent Eighth Circuit decision in *Bonham v. Bisignano*, 177 F.4th 934 (8th Cir. 2026), where the Court evaluated "[t]he ALJ's lengthy opinion focused in great detail on the voluminous hospital medical records reflecting [the claimant's] condition and medical treatment during the disability period at issue." *Id*. at 942. As in *Bonham*, the ALJ went through Plaintiff's various medical procedures and records regarding his lower back pain and "concluded, after a thorough and systematic review of these medical records and other evidence in the administrative record, that [the claimant] was not disabled." *Id*. at 934, 943–44. As discussed, the ALJ reviewed Plaintiff's "objective medical and other evidence supporting" (*Bonham,* 177 F.4th at 944) his claims of debilitating pain but determined that "[u]ltimately, the objective clinical and medical imaging findings do not support the claimant's allegations of debilitating pain." (Tr. 1010) In particular, the ALJ considered the most recent and relevant medical evidence, which found that "he exhibited full range of motion, no focal deficits, and just mild tenderness to palpation" and "radiology reports [were] benign." (Tr. 1011; *see also* Tr. 2541, 2592, 2596) Indeed, the ALJ specifically noted that "[i]n limiting the claimant to sedentary work with postural and environmental limitations, I have adequately addressed the claimant's low back pain." (Tr. 1011) The Court finds that the objective medical evidence on which the ALJ relied supported the modified sedentary work RFC the ALJ adopted, and "[t]he weighing of evidence 'is ultimately ... reserved to the [ALJ].'" *Bonham*, 177 F.4th at 945 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). Contrary to Plaintiff's contention, the ALJ did not simply rely on his own inferences. *Bonham*, 177 F.4th at 945 (*Cf. Combs v.*

9

*Berryhill*, 878 F.3d 642, 646-47 (8th Cir. 2017)). Thus, the Court finds that the RFC was based upon substantial evidence and affirms the decision of the Commissioner.

### B.  Limitation in Concentration Persistence or Pace in the RFC Assessment

At Step 3 of the sequential evaluation, the ALJ found that Plaintiff has a moderate limitation in his ability to maintain concentration, persistence or pace. (ECF No. 19 at 12) Specifically, the ALJ found that Plaintiff has the RFC to, in relevant part:

> understand, remember, and apply simple instructions, make simple work-related decisions, and sustain concentration, persistence and pace to perform simple tasks. The claimant can tolerate occasional interactions with supervisors and coworkers and no interaction with the public. The claimant can deal with occasional changes in a routine work setting with these limitations.

(Tr. 1009, ¶5) Notably, the ALJ's RFC assessment matched the hypothetical question posed to the vocational expert (VE), which the ALJ used to deny his claim at Step 5. (Tr. 1012)

Plaintiff argues that the ALJ's RFC assessment, as well as the hypothetical posed to the VE, do not contain sufficient limitations or restrictions to account for Plaintiff's moderate impairment in concentration, persistence, or pace. (ECF No. 19 at 12) Plaintiff complains that the RFC "merely includes limitations regarding the interactions with coworkers and the public, and limitations regarding the ability to adapt to a work setting." (ECF No. 19 at 12) Plaintiff argues that "[a] hypothetical question that omits the effects of concentration, persistence, or pace deficiencies, when the ALJ finds that Plaintiff has these deficiencies, is not sufficient." (ECF No. 19 at 13 (citing *Harrison v. O'Malley*, No. CV 23-5114, 2024 WL 1810583, at *4 (W.D. Ark. Apr. 10, 2024)). Plaintiff asserts that his "medically determinable impairments of ADHD and anxiety would actually interfere with his ability to concentrate and persist on tasks and [Plaintiff] reported that he cannot concentrate, read or focus on things" and that the "ALJ failed to account for interruptions from these limitations in the RFC assessment." (ECF No. 19 at 14)

10

Here, the ALJ translated "moderate" limitations in concentrating, persistence, or maintaining pace into an RFC limitation that Plaintiff could "sustain concentration, persistence and pace to perform simple tasks." (Tr. 1008-09). Thus, the Court finds that the ALJ accounted for Plaintiff's mental limitations and "[w]hether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and "it is not this Court's role to reweigh that evidence." *Austin v. Kijakazi*, 52 F.4th 723, 731 (8th Cir. 2022) (citing *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022)). Thus, the Court affirms the decision of the Commissioner.

**IV.        Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of August, 2026.